### UNITED STATES v. HOWELL.

(District Court, N. D. California. November 5, 1894.)

No. 3,040.

1. COUNTERFEIT MONEY—POSSESSING AND PASSING—INDICTMENT — FAILURE TO SET OUT.

An indictment under Rev. St. §§ 5431, 5457, for possessing and passing counterfeit notes and obligations of the United States, sufficiently excuses the failure to set them out by alleging that the grand jury did not have

them in their possession or under their control, and did not know where they were, or that they were returned to defendant before the finding of the indictment, or that they were destroyed.

2. SAME—SUFFICIENCY OF DESCRIPTION.

In such case it is sufficient, in connection with allegations as to the place, time, and person to whom passed, to allege that the counterfeit notes and obligations were "United States notes" (i. e. greenbacks) of a certain denomination.

Martin D. Howell demurs to an indictment charging him with possessing and passing counterfeit money. Demurrer overruled.

Charles A. Garter, U. S. Atty. (Samuel Knight, Asst. U. S. Atty., of counsel), for the United States.

Reddy, Campbell & Metson and E. S. Pillsbury, for defendant.

MORROW, District Judge. This case came up on a demurrer to the indictment pending against the defendant, Martin D. Howell. He is charged, under sections 5431, 5457, Rev. St. U. S., with having in his possession and passing counterfeit notes and obligations and coins of the United States. A general demurrer is interposed to the indictment as a whole, and also specifically to each count thereof, 15 in number. It will, however, only be necessary to consider the objections urged to the eighth, thirteenth, and fourteenth counts, the demurrer being, as to the other counts, without merit. The three counts just referred to relate to counterfeit United States notes. The specific objections urged against these three counts are substantially: First, that the alleged counterfeit notes, claimed to have been in the possession of the defendant, are not sufficiently described; second, that no legal excuse is given why said alleged counterfeit notes are not more particularly described, and copies thereof inserted in the indictment. A third objection is made, which, however, goes only to the eighth and fourteenth counts, and that is that the acts therein charged are barred by the statute of limitations of the United States applicable to offenses not capital. In this respect it is sufficient to indicate that section 1044, Rev. St. U. S., which formerly provided a two-years limitation as to offenses other than capital, was amended in 1876, and the limitation enlarged to three years. Tested by the latter limitation, the acts charged are not barred from prosecution. Recurring to the other two objections made to the eighth, thirteenth, and fourteenth counts, it might be well briefly to refer to these three charges as they are set out in the indictment. That part of the eighth count, which is material to the questions raised by the demurrer, is as follows:

"That Martin D. Howell * * * on the 25th day of February, 1892, at the city of Stockton, county of San Joaquin, * * * did then and there knowingly, willfully, and fraudulently and feloniously keep and have in his possession three certain false, forged, and counterfeit notes and obligations of the United States of America, to wit, three certain false, forged, and counterfeit United States notes, each of said false, forged, and counterfeit notes purporting to be a United States note of the denomination of five dollars, issued by and under the authority of the laws of the United States (a more particular description of which said false, forged, and counterfeit notes and obligations is to the grand jurors aforesaid unknown). * * *"

The reasons for not setting out more particularly a description of the notes are given as follows:

"And the grand jurors aforesaid, on their oath aforesaid, do further present and say that the said false, forged, and counterfeit notes and obligations so kept and had in the possession of the said Martin D. Howell as aforesaid are not, and each of them is not, more particularly described herein, and copies thereof, and the tenors thereof, respectively, and of each thereof, are and is not herein set forth, for the reason that the grand jurors aforesaid have no knowledge or information as to where, in whose possession, or under whose control the said false, forged, and counterfeit notes and obligations, and each thereof, now are and is, and have and has been since the same were and was so kept and had in the possession of the said Martin D. Howell, as aforesaid," etc.

The thirteenth and fourteenth counts charge the defendant with passing separate counterfeit United States notes on two different occasions. The description of these United States notes is similar to that just quoted from the eighth count, but the reasons for not setting them out more particularly are somewhat different. The excuse contained in the thirteenth count is that the note therein referred to was returned to the defendant before the finding and presenting of the indictment, without the knowledge, connivance, or direction of the grand jurors, or any of them, or of the United States attorney for this district, or of any one on their or his behalf; and that they or any of them have no knowledge or information as to where, in whose possession, or under whose control the counterfeit note and obligation now is, or has been, since its said return. The excuse for not setting out more particularly a description of the counterfeit note in the fourteenth count is, briefly, that it was destroyed and wholly lost before the finding and presenting of the indictment. To recapitulate, in the eighth count the reasons given for not setting out the three counterfeit United States notes which are the subject of that charge according to their tenor, or more particularly, is that the grand jurors had them not in their possession or under their control; in the thirteenth count, that the counterfeit United States note was returned to the defendant before the finding and presenting of the indictment; and in the fourteenth count, that the counterfeit note therein referred to has been destroyed. I entertain no doubt that the excuses tendered and the reasons given therefor and contained in the three counts of the indictment, to which objections have been raised, are legally sufficient. While it is a stringent rule of criminal pleading that forged and counterfeited instruments or writings, which form the gravamen of the offense, must be set out in an indictment or information according to their tenor, yet there are circumstances constituting exceptions which compel a relaxation of this general rule. The authorities and text-books segregate the exceptions into the following general classes: (1) Where the prosecution has not in its possession, and is unable to procure, the instrument or writing; (2) where it has been destroyed or lost; (3) where it is in the possession of the defendant. Com. v. Houghton, 8 Mass. 107; State v. Potts, 9 N. J. Law, 26; People v. Kingsley, 2 Cow. 522; State v. Gustin, 5 N. J. Law, 744; State v. Parker, 1 D. Chip. 298; People v.

Badgley, 16 Wend. 53; Com. v. Snell, 3 Mass. 82. Also, Whart. Cr. Pl. (9th Ed.) § 176, p. 124; Bish. Cr. Proc. (2d Ed.) § 404, p. 197. These exceptions spring from the very necessities of the rule itself, and are designed, not to suffer criminals to cheat the law by reason of the fact that the prosecution may be handicapped in not possessing the forged and counterfeited instrument or writing, and unable, therefore, to set it out in haec verba; otherwise it would result that offenders who, by their good fortune or dexterity, could destroy or make away with the forged and counterfeited instruments or writings, as, for instance, the counterfeit United States notes in the case at bar, which constitute the very means by which it was sought to violate the law, would go unpunished. This would, in effect, be affording to forgers and counterfeiters an immunity from prosecution which never was intended to be tolerated in a civilized country. But although the prosecution, when a case presents facts coming within the recognized exceptions, is excused from setting out the instrument or writing in haec verba, yet it is still under an affirmative duty to the defendant, and in fact it may be stated that, to bring a case within the exceptions, there are two conditions inseparably connected therewith: (1) The reasons for not setting out the instrument or writing in haec verba must appear in the indictment itself, and these must be sufficient in law to excuse the failure to set out according to the tenor. (2) Even though the reasons for not setting out in haec verba or describing the instrument or writing more particularly may be legally sufficient, the indictment must still contain such a description of the forged and counterfeit instrument or writing as will sufficiently tend to identify and individualize it, so that the defendant may be advised of the charge against him. Concerning the first proposition, as already stated, I entertain no doubt that the excuses given, and the reasons therefor, contained in the indictment, are legally sufficient.

We now proceed to the second proposition. It is contended by counsel for defendant that the description of the notes is insufficient to apprise the defendant as to the particular kind of obligation or security of the United States he is charged with possessing and passing in violation of law. The chief object of an indictment or information is to apprise the defendant clearly and fully with what he is accused, so that he may prepare for his defense, and also, in case of his conviction or acquittal, avail himself of that fact to be protected from further prosecution. U. S. v. Cruikshank, 92 U. S. 542, 558. Would the averments of the indictment in the three counts referred to relating to the description of the counterfeit United States notes subserve these objects? I think they would. Analyzing the three counts objected to (and in this respect they are all identical), and we find (1) that the particular kind of obligation of the United States is specified, and (2) the denomination of such obligation is set out. It is averred in all three counts that the counterfeit obligations of the United States which the defendant is accused of possessing and passing purported to be United States notes, and that they were of the denomination of five dollars. It must be remembered, in this connection, that United States notes are not

v.64F.no.1—8

private, but they are public, obligations, provided for by acts of congress. They are what are commonly known as "greenbacks," a particular and distinct kind of obligation of the United States. The well-known public character of this obligation of the government would, it seems, not necessitate the specific description which private obligations ordinarily require; but, giving the defendant the benefit of any doubt upon this matter, and placing, for the purposes of this demurrer, public and private notes and obligations upon the same level so far as their identification is concerned, I am still of the opinion that they are sufficiently described and referred to, in connection with the other facts averred, to inform the defendant of the charge intended to be preferred against him, and to enable him to prepare for his defense. That the term "United States notes" is sufficiently specific, and refers to a well-known and defined obligation of the government, is made clear by the following section (section 5413, Rev. St. U. S.): "The words 'obligation or other security of the United States' shall be held to mean all bonds, certificates of indebtedness, national currency, coupons, United States notes," etc. Had the indictment simply alleged that the counterfeit notes were obligations of the United States, and had gone no further, it would, confessedly, be subject to the same infirmity which I held fatal in the former indictment; for the defendant would not be apprised of the kind of counterfeit obligations of the United States he is charged with having had in his possession and with passing. It might be a bond, or a coupon, or a United States treasury note, or a national bank note, or a gold or silver certificate, or a United States note. But the present indictment has provided against this by specifying the particular kind of governmental obligation, and also its denomination. In indictments for having in possession and for passing counterfeit coins no more specific allegation as to the character of the coins would be required. But this is not all. The contention that the defendant is not sufficiently apprised of the character of the government obligation respecting which he is charged is weakened when we observe that the day when he committed the alleged violation of law, the place where, and, in the case of passing of counterfeit notes, the persons upon whom he passed them, are distinctly alleged. These averments certainly assist very materially in identifying the several United States notes, and in apprising the defendant of the charge against him, so that he may be advised whether, at the time, place, and under the circumstances stated, he did or did not commit the alleged offenses; and when an indictment does this, and is free from any technical defect which is held to be fatal, I do not see how the defendant can be prejudiced. While the description of the counterfeit United States notes may not be as full and complete as defendant desires, and is such that, in the absence of a legal excuse for not setting them out according to their tenor, or more particularly, the indictment would be fatal in that respect, still I am of the opinion that, in view of the fact that the notes were not in the possession of the grand jurors, and were beyond their control, the description is sufficient to bring home to the defendant, in connec-

tion with the other facts set out, the nature of the accusation preferred against him. I do not see that he is prejudiced in not getting a more minute description of the notes. Especially is this true as to those United States notes which, it is stated in the indictment, were returned to or remained in the defendant's possession. The demurrer will therefore be overruled.